IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGIA VANETTA MOBLEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-697-GPM |
| | ) |
| CERRO FLOW PRODUCTS, INC., a Delaware corporation with its principal place of business located in Illinois, et al., | ) ) ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

### I. INTRODUCTION

This case is before the Court on the motion for remand of the case to state court brought by Plaintiffs Georgia Vanetta Mobley, Mallie Yvonne Payne, Ceolia Terry Julien, Linda Goodwill, Pamela Jean Nesbitt, Nina Alexis Clark, Jeanette Smith-Jackson, Lela Mae Humphrey, Mary Etta Henry, Felicia Lynndell Murdock, Gladys Maurine Porter, Carolyn Jean Hughes, Lorraine Franzella McKinney, Hattie Johnson, Vivian A. Hannah, Kimberly Renee Gaines, Donna Ann Mendez, Sheila Stevenson, Christa Michelle Pierce, Flossie G. Williams, Tamiko Dawnyel Smith, Mildred Wells, Donna Marie Johnson, Gail Yvonne Wren, Gwendolyn Ray, Dorothy Elizabeth Weir, Deborah Kaye Reeves, Cynthia Marie Edwards, Alice Mae Moore, Brenda Fay Snelling, Ruby N. Fleming, and Ora Mae Johnson (Doc. 25). According to the allegations of the operative complaint in this case, Plaintiffs are persons who reside or have resided in St. Clair County, Illinois, and who seek damages for personal injuries and/or

property damage due to allegedly improper disposal of toxic chemicals at three locations in and around Sauget, Illinois, that are styled "Release Sites" in Plaintiffs' complaint: (1) the Sauget Landfill, an approximately 90-acre site in Sauget; (2) the W.G. Krummrich Plant, an approximately 314-acre site located at 500 Monsanto Avenue in Sauget where at the times relevant to this case a group of affiliated companies comprised of Defendants Pharmacia Corporation ("Pharmacia"), Solutia, Inc. ("Solutia"), Monsanto AG Products, LLC ("Monsanto"), and Pfizer, Inc. ("Pfizer"), manufactured chemicals and chemical products, in some instances pursuant to contracts with the federal government; and (3) a site at 3000 Mississippi in Sauget owned by Defendant Cerro Flow Products, Inc. This case was filed originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, on July 29, 2009. The operative complaint in the case asserts claims for personal injuries based on theories of negligence, strict liability, nuisance, and battery together with claims for property damage based on theories of negligence, nuisance, and trespass. On August 15, 2009, Solutia and Monsanto removed the case to this Court

According to the notice of removal in this case, polychlorinated biphenyls ("PCBs") were produced at the W.G. Krummrich Plant between 1935 and 1977; the removing Defendants, Solutia and Monsanto, assert also that the herbicide Agent Orange was manufactured at the W.G. Krummrich Plant between approximately 1965 and 1969, although Plaintiffs' complaint waives claims based on Agent Orange. *See* Doc. 2-1 at 2 ¶ 1. As to the Sauget Landfill, Solutia and Monsanto claim that between 1940 and 1945 that site was used to dispose of toxic waste from three plants operated by Pharmacia on land immediately adjacent to the W.G. Krummrich Plant where chemicals were produced pursuant to contracts with the Chemical Warfare Service ("CWS"), an

agency of the United States War Department (the predecessor of the United States Department of Defense). Solutia and Monsanto assert also that waste from the plants operated by Pharmacia pursuant to contracts with the CWS was disposed of into Dead Creek, which is part of the area identified by Plaintiffs as being contaminated by improper disposal of toxic waste at the three Release Sites named in Plaintiffs' complaint. The removing Defendants assert that, insofar as they are sought to be held liable for contamination resulting from improper disposal of toxic waste at the Sauget Landfill, the W.G. Krummrich Plant, and Dead Creek, their actions were undertaken at the direction of the government and thus this case is properly within the Court's jurisdiction over suits against persons acting under the direction of a federal officer pursuant to 28 U.S.C. § 1442. Alternatively, Solutia and Monsanto allege federal subject matter jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). On October 5, 2009, Plaintiffs moved for remand of this case to state court for lack of federal subject matter jurisdiction.[1] Plaintiffs' motion for remand has been fully briefed and the Court now rules as follows.

## II. ANALYSIS

As an initial matter, the Court notes the well settled standard under which it must evaluate the instant motion for remand. A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540

---

1. Plaintiffs also have brought a motion requesting that certain documents attached to the notice of removal in this case be excluded from the record of the case (Doc. 24). The Court denies this request, as the challenged documents are public court documents that the Court can judicially notice. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

(7th Cir. 2006); *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006). Federal removal jurisdiction is statutory in nature and is to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). Removal is proper if it is based on permissible statutory grounds and if it is timely. *See Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004); *Gragg v. Alfa Laval, Inc.*, Civil No. 09-773-GPM, 2009 WL 4110389, at *1 (S.D. Ill. Nov. 20, 2009). Finally, "[d]oubts concerning removal must be resolved in favor of remand to the state court." *Ellis v. Hansen & Adkins Auto Transp.*, Civil No. 09-677-GPM, 2009 WL 4673933, at *1 (S.D. Ill. Dec. 4, 2009). *See also Stephens v. A.W. Chesterton, Inc.*, Civil No. 09-633-GPM, 2009 WL 3517560, at *1 (S.D. Ill. Oct. 22, 2009) ("Any doubts about the propriety of removal must be resolved against removal and in favor of remand to state court.").

      A.    **Federal Diversity Jurisdiction under the CAFA**

As already has been noted, one of the asserted basis for federal subject matter jurisdiction in this case is diversity jurisdiction under the CAFA. Among the actions covered by the CAFA is a "mass action," defined by the statute as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," and in which there is minimal diversity of citizenship (at least one plaintiff is not a citizen of the same state as at least one defendant) and the plaintiffs each seek a recovery exceeding $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(11)(B)(i). *See also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761-62 (7th Cir. 2008); *Gilmore v. Bayer Corp.*, Civil No. 09-986-GPM, 2009 WL 4789406, at *2 (S.D. Ill. Dec. 9, 2009). The CAFA

further authorizes removal of "mass actions" from state court to federal court.  *See* 28 U.S.C. § 1332(d)(11)(A); 28 U.S.C. § 1453(b); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1195 (11th Cir. 2007); *Aburto v. Midland Credit Mgmt., Inc.*, Civil Action No. 3:08-CV-1473-K, 2009 WL 2252518, at *1 (N.D. Tex. July 27, 2009).  According to Solutia and Monsanto, the removing Defendants in this case, this action is identical to four other actions pending in this Court, namely, *Custer v. Cerro Flow Products, Inc.*, Civil No. 09-514-DRH (S.D. Ill. filed July 9, 2009), *Clayton v. Cerro Flow Products, Inc.*, Civil No. 09-550-GPM (S.D. Ill. filed July 23, 2009), *Williams v. Cerro Flow Products, Inc.*, Civil No. 09-551-JPG (S.D. Ill. filed July 23, 2009), and *Brown v. Cerro Flow Products, Inc.*, Civil No. 09-582-GPM (S.D. Ill. filed July 30, 2009).  Solutia and Monsanto argue that, if the thirty-two Plaintiffs in this case are aggregated with the twenty-one plaintiffs in *Custer*, the nineteen plaintiffs in *Clayton*, the five plaintiffs in *Williams*, and the thirty plaintiffs in *Brown*, this case may be deemed to contain 107 Plaintiffs, slightly in excess of the minimum number of plaintiffs required for the exercise of jurisdiction under the CAFA. The Court finds this argument to be frivolous, as it is clearly precluded by the statutory language of the CAFA.

      First, the CAFA expressly excludes from the statutory definition of a "mass action" any civil case in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State[.]" 28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Here it is undisputed that Plaintiffs in this case are suing in Illinois on claims that arose in Illinois.  Second, the CAFA also excludes from the statutory definition of a "mass action" any case in which" the claims are joined upon motion of a defendant[.]" 28 U.S.C. § 1332(d)(11)(B)(ii)(II).  Here the only way that the claims this case could be joined with

the claims in *Custer*, *Clayton*, *Brown*, and *Mobley* would be on a motion for consolidation by Defendants, given that Plaintiffs' complaint in this case expressly disclaim any desire for consolidation of the claims in this case with related claims. *See* Doc. 2-1 at 3 ¶ 12. It is the case, of course, that in some instances a court can order consolidation sua sponte. *See Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009, 1013-14 (S.D. Ill. 2007). However, the Court sees no likelihood of sua sponte consolidation here and, even if such consolidation were to occur, it likely would be solely for pretrial purposes, which would not bring the consolidated claims within the scope of the CAFA. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV) (excluding from the CAFA's statutory definition of a "mass action" civil actions in which "the claims have been consolidated or coordinated solely for pretrial proceedings"). In sum, the removing Defendants' argument for CAFA jurisdiction in this case is expressly foreclosed by the language of the statute. *See Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952-56 (9th Cir. 2009) (claims of plaintiffs in separate cases cannot be aggregated to form a "mass action" under the CAFA). The Court concludes that diversity jurisdiction under the CAFA does not exist in this case.[2]

---

2.   The Court's conclusion that this case is not a "mass action" also is supported by a number of traditional rules governing the exercise of federal subject matter jurisdiction on removal: first, that only a voluntary act of a plaintiff (rather than an involuntary consolidation) can make a case removable, *see Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71-72 (7th Cir. 1992); *Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 1002-03 (S.D. Ill. 2007); second, that a federal court cannot acquire subject matter jurisdiction through consolidation of cases or consolidate cases as to which it lacks such jurisdiction, *see Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 912-13 (3d Cir. 1999) (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933)); *United States for Use of Owens-Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987); and third, that, as already has been discussed, the right of removal is construed narrowly. The CAFA is presumed to have been enacted in light of these settled principles and must be interpreted in a manner that is consistent with them. *See Kitson v. Bank of Edwardsville*, Civil No. 06-528-GPM, 2006 WL 3392752, at **13-14 (S.D. Ill. Nov. 22, 2006); *Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 775-76 (S.D. Ill. 2006).

### B. Federal Officer Jurisdiction

Having disposed of the removing Defendants' argument for federal subject matter jurisdiction under the CAFA, the Court turns to the issue of whether federal subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1442. That statute provides, in relevant part, for the removal of "[a] civil action . . . commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). To effect removal as persons acting under a federal officer, Solutia and Monsanto, the removing Defendants, must prove three elements: (1) they are "persons" within the meaning of the statute; (2) they acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Plaintiffs' claims and the acts the removing Defendants performed under the direction of a federal officer; and (3) the removing Defendants have a colorable federal defense to state-law liability. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 129 (1989); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Kelly v. Martin & Bayley, Inc.*, 503 F.3d 584, 586-87 (7th Cir. 2007); *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 844-45 (S.D. Ill. 2006).[3] The basic purpose of Section 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal

---

3. It appears that, of the four Defendants in this case that are, as already has been noted, affiliated corporations (Pharmacia, Solutia, Monsanto, and Pfizer), only Pharmacia actually was involved in the toxic waste dumping activities alleged in the complaint; the liability of Solutia, Monsanto, and Pfizer presumably is based on principles of successor liability or some other theory warranting disregard of separate corporate entities for purposes of imposing liability on Pharmacia's affiliated corporations. For the sake of simplicity, in this Order the Court has tried wherever possible to treat Pharmacia, Solutia, Monsanto, and Pfizer as if all four companies were involved in the misconduct alleged in Plaintiffs' complaint, consistent with Plaintiffs' theory that the affiliated corporations are jointly and severally liable for harm caused by that misconduct.

officers. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977). Because federal officer removal is rooted in "an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit," although such jurisdiction is read "expansively" in suits involving federal officials, it is read narrowly where, as in this instance, only the liability of a private company purportedly acting at the direction of a federal officer is at issue. *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150, 1152 n.6 (D. Colo. 2002) (emphasis omitted).

  For purposes of the "acting under" requirement of 28 U.S.C. § 1442(a)(1), this element, as noted, entails a showing of a causal nexus between acts taken by the removing Defendants at the direction of a federal officer and the injury of which Plaintiffs complain. Under the "regulation plus" standard for acting under a federal officer embraced by this Circuit, a causal nexus is established by showing that complained-of conduct was undertaken at the express direction of a federal officer. For example, in *Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994), the United States Court of Appeals for the Seventh Circuit upheld the removal under Section 1442(a)(1) of a suit for extortion brought by an operator of video poker machines against an agent of the Illinois Liquor Control Commission who solicited a bribe from him, where the defendant claimed that he solicited the bribe at the direction of agents of the Federal Bureau of Investigation, which was conducting a sting operation against the plaintiff. *See id.* at 210-12. As the Supreme Court of the United States has instructed, to show the propriety of removal under Section 1442(a)(1), "[t]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution." *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). "It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under

color of federal authority and in enforcement of federal law, *and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty*." *Id.* at 131-32 (emphasis added). *See also Freiberg*, 245 F. Supp. 2d at 1155 ("What [removing defendants] must establish for purpose of [Section] 1442(a)(1) is that the government authority under which they worked required them to act as they did," that is, "they must establish the [government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation[.]").

In this instance what is chiefly in dispute between the parties is whether the removing Defendants have met their burden to show a causal nexus between Plaintiffs' claims and acts the removing Defendants allegedly took at the direction of a federal officer; in other words, whether the removing Defendants can "show that . . . the federal officer really did 'make them do it[.]'" *Weese v. Union Carbide Corp.*, Civil No. 07-581-GPM, 2007 WL 2908014, at *7 (S.D. Ill. Oct. 3, 2007) (quoting *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 664 (E.D. Tex. 1999)). It appears from the record of this case that this issue hinges entirely on toxic waste dumping activities of the removing Defendants in connection with the plants operated by their corporate affiliate Pharmacia during the Second World War pursuant to contracts with the CWS. Thus, before reaching the issue of whether the removing Defendants have shown a causal nexus for purposes of the second prong of the test of federal officer jurisdiction, the Court must address a dispute between the parties about the pertinence of evidence concerning toxic pollution allegedly caused by the plants operated by Pharmacia pursuant to contracts with the CWS. Plaintiffs point out that the site of those plants is not identified as a "Release Site" in their complaint. This is true, but as the removing Defendants point out, there is evidence that toxic wastes from the plants that

Pharmacia operated pursuant to contracts with the CWS was dumped in the Sauget Landfill, which is one of the Release Sites identified in Plaintiffs' complaint, and in Dead Creek, which is part of the area identified in Plaintiffs' complaint as having been contaminated by Pharmacia, Solutia, Monsanto, and Pfizer. Accordingly, the Court concludes that evidence concerning the plants operated by Pharmacia pursuant to contracts with the CWS is relevant to the issue of whether federal officer jurisdiction exists in this case, and the Court will consider such evidence in evaluating Plaintiffs' motion for remand of this case to state court.

The Court turns then to the issue of whether the removing Defendants have shown that they acted under a federal officer. The removing Defendants point out, of course, that the plants Pharmacia operated pursuant to contracts with the CWS were engaged in the production of chemicals for use by the War Department and that military personnel were assigned to the plants, including officers in oversight positions. Concerning the specific manner in which toxic waste from the plants was disposed of, the removing Defendants offer deposition testimony taken in a separate case by Charles McDonnell, who worked at one of the CWS plants for approximately eighteen months beginning in the latter part of 1943. According to McDonnell, a colonel assigned to the plant where he worked was in charge of the "whole shebang." Doc. 2-5 at 12. McDonnell testified also that while he was working at the plant, toxic chemicals were disposed of by washing them down the sewer or dumping them into the Sauget Landfill. According to McDonnell, waste from the plants, including trash, floor sweepings, oil and solvent-soaked rags, process residues, and drums containing liquid wastes were hauled by Pharmacia to the Sauget Landfill for disposal. *See id*. at 14-20, 23, 36, 39-45, 59-63, 80-83, 85-87, 90-91. In addition to McDonnell's testimony, the removing Defendants point to the deposition testimony, also taken in a separate case, of

Ernest Mares, an industrial chemist who was in charge of the manufacturing operations at a plant operated by Pharmacia pursuant to a contract with the CWS for approximately three and a half years and who testified that the military was responsible for "oversight" at the plant. Doc. 2-4 at 28. Finally, the removing Defendants rely on a letter dated August 24, 1944, in which a brigadier general in charge of the technical division of the CWS expressed the view that waste chemicals at one of the plants operated by Pharmacia for the CWS should be "sewered." Doc. 2-3 at 8. This evidence, the removing Defendants contend, establishes that the acts challenged in this lawsuit were taken at the direction of federal officers.

Plaintiffs for their part point out that the plants operated by the removing Defendants' affiliate Pharmacia for the CWS during the Second World War were designed and built by Pharmacia. Concerning McDonnell's testimony, Plaintiffs point out that McDonnell concedes that he has no personal knowledge of the contractual arrangement between CWS and Pharmacia or of the scope of governmental oversight as to the activities of Pharmacia. *See, e.g.*, Doc. 2-5 at 11-12. They point out also that, according to McDonnell, the governmental presence on site at the CWS plants was not especially pronounced: McDonnell testifies that government officers would "come in, stay a few hours" and then go elsewhere to "goof off." *Id*. at 11. Finally, as to disposal of toxic waste at the plants, McDonnell was clear that "Monsanto did the dumping." *Id*. at 63. Concerning Mares's testimony, Mares acknowledged that while the military had the power of ultimate control over the plant where he worked during the Second World War, Pharmacia controlled "the actual, basic operation of the plant" and that the military's oversight role was confined chiefly to signing off on the manner in which the removing Defendants ran production at the plant, that is, "We designed it, and they [the military] approved it." Doc. 2-4 at 28, 118. Finally, concerning the letter

urging waste chemicals to be "sewered," Plaintiffs point out that this was only a "recommend[ation]" by the military, not a command. Doc. 2-3 at 8. Plaintiffs point out also that the military gave Pharmacia and its agents the freedom to manage production at the CWS plants "in whatever manner they saw fit." *Id*. at 15. Finally, Plaintiffs point out that the removing Defendants have adduced no evidence, in the form of exemplar contracts or regulations, for example, showing that the military regulated disposal of toxic waste at the plants operated by Pharmacia pursuant to contracts with the CWS in a manner that prevented Pharmacia and/or affiliated corporations from complying with their duties under state law. The Court believes that Plaintiffs have the better of the argument here. On the state of the record, the evidence in this case shows merely that the acts complained of in this lawsuit occurred under the general auspices of federal authorities, not that federal authorities specifically directed those acts as is required to establish a causal nexus for purposes of federal officer jurisdiction.

A review of authority from sister federal trial courts bolsters the conclusion that federal officer jurisdiction does not exist in this case. For example, in *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965 (D. Ariz. 1992), a plaintiff class brought suit alleging injuries caused by the defendants' alleged dumping of toxic substances and contamination of the plaintiffs' water supply. *See id*. at 967. One of the defendants, General Dynamics Corporation, was a military contractor that sought removal under 28 U.S.C. § 1442(a)(1). The court noted that, "[t]o prevail, General Dynamics must prove the existence of a nexus between actions for which it is being sued and the activities of the federal official . . . . The critical analysis is 'to what extent defendants acted under federal direction' at the time they were engaged in conduct now being sued upon.'" 795 F. Supp. at 969 (quoting *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841, 844

(S.D.N.Y. 1973)). The court noted further that "[m]ost courts which have addressed this issue require 'direct and detailed control' by the federal official over the defendant." *Id*. (quoting *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 950 (E.D.N.Y. 1992)). The court concluded that while the removing defendant had shown that it had a contractual relationship with the government, it had "made no showing as to the manner in which the contract was carried out." *Id*. at 970. The court explained that the defendant's government contract provided an insufficient basis for federal officer removal. "While the government officials were undoubtedly most interested in the production of war materials, the record before this Court does not demonstrate the government's necessary control over the method of waste disposal. The mere fact that the government possessed the power to exercise control over the project does not establish that the power was in fact ever exercised." *Id*. Thus, the court found that the case was not within federal officer jurisdiction.

In *Arness v. Boeing North American, Inc.*, 997 F. Supp. 1268 (C.D. Cal. 1998), the plaintiffs brought suit against the defendants based on the defendants' "alleged release of [toxic chemicals] from their activities at [certain facilities] which allegedly resulted in the contamination of the surrounding area's groundwater, soil and subsurface soil." *Id*. at 1270. The plaintiffs alleged that the defendants' conduct exposed them to the toxic chemicals and they sought damages for injuries caused by that exposure. *See id*. The defendants asserted that they conducted activities at those facilities under government contracts and at "the direction of federal officers pursuant to detailed and comprehensive procedures dictated by these officers." *Id*. Specifically, the defendants asserted that the government's production requirements mandated the flushing of rocket engines with the toxic chemicals that allegedly contaminated the surrounding environment. *See id*. at 1273.

The district court observed, however, that the defendants' "use of [toxic chemicals] did not cause Plaintiffs' injuries. Rather, Plaintiffs' injuries were allegedly caused by [the defendants'] negligent disposal and storage of [the chemicals], which activities were not performed at the government's behest." *Id*. at 1274-75. Moreover, the government's failure to specify storage and disposal practices for the toxic chemicals despite mandating their use was insufficient to establish a causal nexus. *See id*. at 1275. The court concluded that "because the government did not specify safeguards that [the defendants] must use, or restrict [the defendants'] ability to implement safeguards, [the defendants were] not acting under federal direction when [they] allegedly released the [toxic chemicals]. Rather, the acts relevant to Plaintiffs' suit occurred only 'under the general auspices of' a federal officer." *Id*. (quoting *Fung v. Abex Corp*., 816 F. Supp. 569, 572 (N.D. Cal. 1992)). Accordingly, the court remanded the case to state court for lack of subject matter jurisdiction under 28 U.S.C. § 1442(a)(1).

Finally, in *New Jersey Department of Environmental Protection v. Exxon Mobil Corp*., 381 F. Supp. 2d 398 (D.N.J. 2005), the district court considered its jurisdiction over claims based on the defendant's waste disposal practices. The plaintiff had brought a state-law action for cleanup and removal costs, and also for damages allegedly caused by discharges at the defendant's property. *See id*. at 401. The defendant removed the action on the basis of federal officer jurisdiction, arguing that "certain of its production activities during World War II were at the behest of and under the control of the federal government, and these activities resulted in the disposal of products included in the conduct alleged against it[.]" *Id*. The district court found that federal officer removal was inappropriate. Even if the defendant produced, stored, and transferred certain products under government control, the defendant had not shown that the government ordered the improper disposal

of hazardous wastes. *See id*. at 405. Thus, there was no causal nexus between the actions conducted under government control, that is, the production, storage, and transfer of the products, and the conduct charged by the plaintiff, that is, the "improper disposal of toxic substances into the waters of the [s]tate[.]" *Id*. at 404. The court concluded that, "as Defendant has not offered any evidence supporting its claim that the federal government exercised control over the disposal of hazardous substances, . . . Defendant has not met its burden to demonstrate the requisite causal nexus to invoke the protections of the federal officer removal statute." *Id*. at 405. As in *Bahrs*, *Arness*, and *Exxon*, the record in this case does not show that federal officers dictated the manner in which the removing Defendants' affiliate Pharmacia disposed of chemical wastes or compelled Pharmacia to dispose of those wastes improperly. Instead, the record shows only that Pharmacia acted under the general auspices of a federal officer. Absent proof of a causal nexus between the acts complained of by Plaintiffs and the orders of a federal officer, the removal of this case pursuant to 28 U.S.C. § 1442(a)(1) is improper and the case is due to be remanded to state court.[4]

---

4. As should be clear from the foregoing discussion, the question of whether federal officer jurisdiction is proper in this case hinges ultimately on occurrences at the plants operated adjacent to the W.G. Krummrich Plant during the Second World War. The record in this case is devoid of evidence concerning the production of Agent Orange at the W.G. Krummrich Plant in the 1960s and in any event, as already has been noted, Plaintiffs do not assert claims for damages based on harm caused by Agent Orange. As to the production of PCBs at the W.G. Krummrich Plant from the 1930s until the 1970s, the record is similarly devoid of evidence tending to show a causal nexus. The notice of removal in this case avers that PCBs were manufactured at the site in the 1970s consistent with a federal policy favoring use of PCBs in capacitors and transformers. However, even assuming this is true, this hardly amounts to proof that federal officers compelled the removing Defendants to take certain actions, much less that federal officers hindered the removing Defendants in safely disposing of chemical waste generated by production of PCBs. *Cf. Winters v. Diamond Shamrock Chem. Co.*, 901 F. Supp. 1195, 1199 (E.D. Tex. 1995) (personal-injury claims against manufacturers of Agent Orange were properly removed in federal officer jurisdiction because the manufacturers produced Agent Orange according to specifications prepared by the government and faced criminal penalties if they failed to deliver the product to the Defense Department as ordered).

### III. Conclusion

Plaintiffs' motion to strike exhibits C, D, and E to the notice of removal in this case (Doc. 24) is **DENIED**. Plaintiffs' motion for remand of this case to state court (Doc. 25) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c) this case is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: January 5, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge